Good morning, everyone. The first case on the call this morning is Agenda No. 5, Docket No. 120655, People v. Holman. Helen, are you ready? Kathleen, are you ready? You may proceed. Thank you. May it please the Court, my name is Amanda Horner from the State Appellate Defender's Office, and today I represent Mr. Ricky Holman. Your Honors, Mr. Holman respectfully requests that this Court vacate the Appellate Court's order and remand Mr. Holman's case for a new sentencing hearing, where the trial court failed to consider youth and its attendant circumstances before sentencing him to natural life as required by Miller v. Alabama. Additionally, Your Honors, Mr. Holman would request that this Court adopt a set of factors or guidelines in determining what constitutes a Miller hearing for both the purposes of the trial court and the reviewing courts. Your Honors, Miller v. Alabama has established that courts must consider youth and its attendant circumstances as a constitutionally significant factor in mitigation, but what does it mean to consider youth and its attendant circumstances, and how do we determine whether youth was properly considered when a sentencing hearing took place decades in the past? Youth is, after all, more than a chronological fact, but how do we determine the age of the juvenile? While the Supreme Court compels us to consider juveniles as less culpable than their adult counterparts, it is now up to this Court to determine what a trial court must do to satisfy the rather abstract parameters of Miller in a practical and real manner. While Miller itself does not require a specific procedure, it does provide a set of five factors, a fundamental definition of what youth and its attendant circumstances means. These factors have been adopted by a number of states, either through their Supreme Court or through legislative action, and in fact, Illinois' legislature has recently adopted a set of factors to be considered for current juvenile offenders and prospective juvenile offenders. But for teenagers like Mr. Holman, who fall outside of this new sentencing statute, both the trial courts and the appellate courts continue to grapple with how much consideration of youth is enough, something more than the mere mention of age or the mere knowledge of age by the trial court is required, but how much more? The adoption of the Miller factors would effectively end this guesswork. The factors provide a clear framework for everyone involved in the judicial process, not just the trial courts and the appellate courts, but for advocates as well. The Miller factors when viewed together would provide the clearest definition of what youth and its attendant circumstances encompass and would assure that any Miller hearing that considered these factors was constitutionally sound. Is it your position that no juvenile offender sentenced to life without parole prior to Miller received a constitutional sentencing hearing? That is not Mr. Holman's position. Mr. Holman's position, certainly juveniles that were sentenced under mandatory sentencing schemes obviously have to have new Miller hearings, as this Court's already settled in People v. Davis. But juveniles who received natural life, or as this Court's even mentioned, de facto life in People v. Reyes, do not necessarily have to have a new Miller hearing if the trial court considered youth and its attendant circumstances. And while Miller may not have existed in 1981 when Mr. Holman was sentenced, that does not mean that the trial court could not have considered youth in a way that is in line with the holding in Miller v. Alabama. It's probably unlikely, and in this case, it did not occur. But that doesn't mean that a prescient trial attorney or trial court would not have presented evidence and would not have viewed youth in the way that we understand it today. Counsel, what's wrong with the state's argument that Illinois has long recognized the goal with juveniles and rehabilitation rather than punishment and has had a long list of factors trial courts should consider in sentencing an offendant to natural life? Hasn't that been the policy all along? Illinois, no, Your Honor. Illinois is certainly a progressive state, and Mr. Holman is not suggesting that it wasn't. But consider that Miller directly implicated some of Illinois juvenile sentencing statutes and found them to be unconstitutional. And also consider that Mr. Holman was not considered to be a juvenile at the time he was sentenced. In the eyes of the law in 1981, he was actually an adult, just as 15, 16, and 17-year-olds were up until just a very few years ago. And it was only under Miller that we would actually consider Mr. Holman to be a juvenile. So it's highly unlikely, even knowing that Illinois has been a progressive state, that that necessarily meant that the trial court would have considered Mr. Holman a juvenile. Yet Miller would tell us, based on scientific research and brain development, that a 17-year-old is certainly not an adult, even though the eyes of the law considered him to be such at that time. More importantly, in this particular case, regardless of what Illinois may have said in terms of statutes or whether they were progressive or not, in this particular case, Mr. Holman did not receive an adequate Miller hearing. The procedure itself was faulty because youth was not considered. So regardless of whether these statutory factors existed, regardless of whether they existed through the common law or through judicial decision, they weren't considered in this case. And ultimately, this case is about whether or not Mr. Holman should be sentenced to natural life in prison without having youth properly considered. Part of the problem with determining whether Mr. Holman received an adequate sentencing hearing is because there's no guideline as to what a Miller hearing looks like. For example, there was certainly nothing in the common law at the time that would have told the trial court to consider Mr. Holman's lack of maturity based on the scientific research that we now know exists, or his inability to assist with his defense or to negotiate with the state. And as Your Honor pointed out, some of these factors were certainly already available, and the state did make that argument. But in arguing that youth was something that trial courts considered, the state certainly pointed to one or two cases that existed through the common law. But to suggest that youth was considered in the same way that it is now is to ignore the holding of Miller and other courts who recognize that as the law has continued to evolve, as science has continued to evolve, we see juveniles in a different way. More importantly, the reason that factors are needed is because maybe they are sprinkled throughout the common law. Maybe we can piece them together. But there is nothing that says all of these are required to be presented in a juvenile sentencing hearing. They do not exist in one place. And the adoption of these factors is crucial because it creates consistency in the judicial process, both at the trial and the reviewing court level. When trial courts understand exactly what is expected of them, when attorneys understand exactly what is expected of them in order to comply with constitutional mandates, more consistent results occur. Hearings become less arbitrary and standards are developed. Can you give us an idea of how we go about doing this? Certainly Miller and then Montgomery speak about factors. And yet we have statutes that have set out factors in aggravation and mitigation. How does a court go about making up its own factors? Well, this court has several options. Mr. Holman would urge this court just to simply adopt the factors that are listed in Holman as a definition for what it means to have a Miller hearing. A Miller hearing means that a court must consider these factors in order to be constitutional. And these factors include things like the chronological age of the defender, the incompetencies associated with the youth, their inability to assist counsel, also their social life and their home life because we know they're essentially held captive as juveniles. They're not free to make these choices. There's a set of five factors that Mr. Holman set out in his brief that's adopted completely from Miller versus Alabama. Can I say this? States all over the country are struggling with this. Yes, they are. Can you direct us to a case where the Supreme Court of the state created those factors without some direction by the legislature? Where the court then just said, moving forward, we're mandating that every hearing, a sentencing hearing will include not only the statutory factors of mitigation but these others. Have the states done that? Yes, they have, Your Honor. I would point first off to Aiken versus Byers, which comes out of the state of South Carolina. And they essentially, rather than mandating it, they simply say, look, this is what it means to have a Miller hearing. Here are the factors, and this is the baseline the court should consider in order to institute Miller versus Alabama. Other courts have done that. Minnesota, for example, Iowa. And then other states certainly are adding these to already existing legislation. If we look to Indiana, for example, who chose not to adopt the Miller factors, they didn't do so because those already existed, but they recognized that this was sort of the baseline. And, again, this court ---- Ms. Horner, I'm just asking though, are you saying that the trial court must explicitly state every factor that they're considering? No, Your Honor. Certainly it would be much easier to review if the trial court did that, but this would impose no more on the trial court than this court imposes when they discuss any number of factors in mitigation that are outside the statutory factors. The state has pointed to a case, for example, I think it's the 60s, that noted that age was already a recognized factor in mitigation. That was not through the statutory factors in mitigation, but that was through judicial decision. So this is more of an explanation of what it means, a procedure for what happens when a Miller sentencing hearing occurs. Of the cases from around the country where courts have been struggling with this problem, are there some ---- I know some of them are pre-Montgomery. Yes. But are there some that are post-Montgomery? We were the first ones to try to understand what the Supreme Court meant in Montgomery v. Louisiana. I am not sure if they are post-Montgomery, Your Honor. I think many of them are pre-Montgomery. Many of the courts, like this court, had already recognized that Miller v. Alabama was retroactive and was providing guidance on how the Miller hearing should be carried out. But Montgomery should not affect this analysis in that Montgomery simply said that Miller was retroactive. And this court had already made that holding in People v. Davis, so based on independent Illinois law. So your position is that Montgomery does not require new procedures? I think, correct, Your Honor, I think Montgomery provides further information about Miller v. Alabama. It certainly suggests that procedures should be put into place, but it is not part of the holding of the case. To the extent that Montgomery discusses what sort of parameters exist, it is in dicta. But both Miller and Montgomery note that youth in its attendant circumstances must be considered by the trial court, and both decisions discuss what those circumstances mean. And Mr. Holman is simply asking this court to recognize those factors as something the trial court should consider before sentencing a juvenile to natural life in prison. The state doesn't offer any alternatives to the Miller factors, and instead it argues in its brief that trial court should be told to consider youth and its attendant circumstances. But youth, again, we come back to this very abstract concept. What does it mean to consider youth? It's more than an age, but how much more? And without more guidance to the trial courts and to the appellate courts, we wind up with, as the Aiken court noted, a very general plea for mercy based on age and nothing more, nothing about those factors that talk about juveniles are less culpable. Concrete guidance is necessary. And we can see that because Miller only applies to juveniles that are being sentenced to very long sentences or natural life. And the problem without providing guidance, the problem with the state's argument, is that it runs the very real risk that sentencing hearings become arbitrary or capricious. How one understands youth without more guidance is heavily dependent on personal experience and common sense. And before we require someone to die in prison, especially teenagers, courts and advocates need to be guided by more than that. Consider that if in one part of the state we have a trial court that's told they merely need to consider youth, and then an advocate at that trial makes a general plea for mercy, like the one that occurred in Mr. Holman's case that essentially says, Look, we really don't want to send this young man to prison for the rest of his life, but doesn't discuss whether he's less culpable than his adult counterpart, that doesn't discuss his intellectual or mental health abilities or any of the other infirmities of youth. And then that juvenile is sentenced to natural life. And then compare that with a juvenile who in a different part of the state, as an advocate that presents evidence on all those factors and mitigation and notes that my client was guilty by accountability like Mr. Holman was here, so he's naturally less culpable because of accountability and because he's a juvenile and knows all of these reasons, and then he too receives a sentence. What do we do with the significant aggravating factors that by the time he was 18, the background is three murders, I think, and one attempted murder by the time he was 18 years old. There was ample aggravating evidence supporting the defendant's natural life sentence, right? There were certainly aggravating factors. There were bad facts, and Mr. Holman is not here to argue otherwise. The problem is that Mr. Holman never received the adequate procedure before sentencing him to natural life, and perhaps had counsel adequately presented evidence about his youth, had he adequately outlined that Mr. Holman was mildly mentally retarded, that he had learning disabilities, that he was being led by an adult counterpart, and a variety of other factors that we know affect him because he was a youth. And then the trial court, viewing this through the lens of Miller and noting that after all of this evidence had been presented, Mr. Holman was truly one of those rare incorrigible criminals that must be sentenced to natural life, then that is certainly on the table. Are you putting forward that the fact that the trial court said that there's no factors in mitigation, to you does that mean that the trial court did not consider those factors, that statement? Yes, Your Honor. The trial court said there were no factors in mitigation, and we know from Miller v. Alabama that Mr. Holman's age was a factor in mitigation. Yeah, but my question is, it's more of a semantical one, right? The trial court indicates that there are no factors in mitigation. Could that also mean, isn't it logical to interpret that also to mean not that he didn't consider any factors in mitigation, but there were no factors in mitigation to outweigh the aggravating factors we were just talking about? No, Your Honor, I don't think so. The reason for that is, one, he said there were no factors in mitigation. It's an express finding, and we know that youth was a factor in mitigation. And unlike other factors where perhaps the trial court might not consider it to be that strong, youth is just what it is. It was a factor in mitigation. We also know based on the evidence that was presented at the trial and the state's arguments that there was no evidence presented about Mr. Holman's youth and his attendance circumstances. And, in fact, the sentence was imposed based on nothing more than arguments and the PSI. Did the PSI contain information, though, about his low IQ and the brain injury and so forth that he had? It did. It contained minimal information. But it's not just the presence of facts. It is the lens through which we view those facts. So it's the fact that they didn't argue it, or is it the fact that the judge didn't specifically mention it? Or what? Both, Your Honor. One, we have very limited facts that would suggest that these were factors in mitigation, but certainly those weren't presented, those weren't argued. Again, counsel made only the vaguest plea for mercy. And then in terms of other factors and how we interpret those facts via Miller, those arguments perhaps because counsel and then the trial court didn't realize three decades before Miller that they existed, they weren't argued. What would a remand hearing look like after all these years? Sure. A remand hearing, especially for Mr. Holman, who's been incarcerated for almost 40 years, counsel would be able to discuss what his juvenile status looked like. And we certainly have those facts. We have reports from psychologists. We have psychologists now that could examine those in light of what we know in modern science. What did it mean that he had this mild mental retardation coupled with his lack of maturity as a juvenile? Does that mean he was truly incorrigible? Or can he be rehabilitated? And in this case, where he's been in for 40 years, we also have his long history determine whether or not he really was one of those truly rare juveniles that couldn't be rehabilitated. Your time has expired unless there's a question. Thank you. May it please the Court. I am Assistant Attorney General Gopi Keshav on behalf of the people of the State of Illinois. Your Honors, the threshold question here is what does Miller require? And Miller is premised on the imposition of individualized sentencing for juvenile offenders. The sentencing practice at issue in Miller was mandatory life without parole sentencing. And what Miller does is precludes legislatures from enacting statutes that mandatorily impose life without parole sentences on juvenile offenders. And so it imposes an individualized sentencing requirement similar to the capital sentencing requirements that this Court has applied in Illinois before, and the review processes will be similar, in that the questions are whether the trial court considered the factors in mitigation. Those include youth and its attendant characteristics, and then the family background of the offender, the social environment of the offender, the mentality of the offender. These are all factors that this Court has outlined in their common law. They're factors that are a matter of constitutional imperative in Illinois, and they're factors that since for over a century this Court has recognized that mitigate sentences for juveniles. Counsel, do you believe that every factor should be explicitly stated by the judge then? How else would we know whether or not the judge took that into consideration as in this matter? No, Your Honor. One, Montgomery itself outlined with the baseline procedure that the Eighth Amendment requires, and that is simply an individualized sentencing hearing at which youth, its attendant characteristics, and the nature of the crime are considered as mitigating factors. Second, Your Honor, even in capital sentencing pursuant to Eddings, the courts were always required to consider youth as a mitigating factor, those attendant characteristics as mitigating factors. And in reviewing those sentences, the Court never required a trial court to explicitly state on the record its findings as to those factors. Indeed, this Court has never required trial courts to state on the record, and the reason is that sometimes sentencing procedures are lengthy, and we don't require trial courts to delineate and check off lists of each factor that they may have considered. That goes to Justice Garment's point, Your Honor, about whether counsel should have argued the mitigating qualities of youth or the fact that the Court did not mention them. As this Court said in People v. Burton, the fact that a court mentions a certain factor, and here the Court mentioned that he found no statutory mitigating factors, the fact that a court mentions a statutory factor but doesn't mention any non-statutory mitigating factors does not mean that the Court did not consider those factors. That is what this Court said in People v. Burton, and it reaffirmed that in People v. Thompson in 2006. That is how this Court has reviewed capital sentencing, and it is the same way that this Court can review the juvenile sentencing procedure. The fact that juveniles are young and that they lack maturity, that their habits are unformed and unsettled, that they're susceptible to negative peer pressures, that they can't extricate themselves from social situations or their families, they're not new concepts, Your Honor. As even Miller said, that these are concepts that are matters of common sense that any parent knows. Yes, advances in science have confirmed that juveniles possess these characteristics, but that was not the foundational principle of Miller. The foundational principle of Miller was that juveniles possess these characteristics that we've always known,  and that this Court has employed in its discretionary sentencing scheme, and that because of those factors, a mandatory sentencing scheme that imposes life without parole, without any consideration of these factors, violates the Eighth Amendment, because the legislature simply cannot make that determination at the outset. There will be a category of juveniles who, the vast majority of juveniles, Your Honors, are transiently, commit crimes as a result of transient immaturity and not irreparable corruption. And so therefore, by imposing a mandatory scheme, you're precluding the juvenile from showing that he belongs within the class where he will develop and he will be rehabilitated and he can enter society. And so these are not new concepts, and Illinois law has always required these. May I ask you some questions about Montgomery? Speaking just for myself, I find Montgomery difficult. Interesting case, a very interesting case, both aspects of it. The issue in Montgomery, what is the holding of Montgomery? The issue in Montgomery is whether or not Miller is to be applied retroactively across all of the states, and we know the first part of Montgomery is all about the jurisdictional ideas and whether the Supreme Court, that's a federal question or not, so we know that piece. But then when the second half of Montgomery, when Justice Kennedy goes on to talk about whether or not this is a principle that should be applied retroactively, there's a discussion about what Miller means and what Miller says. I'm trying to be loose on my verbs. At one point the argument is whether Miller is a procedural or substantive new rule, and Montgomery says Miller is in fact a procedural new rule. So what is the procedure that Montgomery is recognizing in Miller? The procedure that Montgomery is recognizing is an individualized sentencing hearing, and it says it in this one particular paragraph. It's an individualized sentencing hearing at which youth, its attendant characteristics, and the nature of the juvenile's crime are considered as sentencing factors. So if you really, and you see this argument repeated, that that is the paragraph where in Montgomery the Supreme Court is going beyond Miller and saying this is the procedure that is dictated. That seems what the words are saying. The procedure that is dictated is that youth, its attendant characteristics, and the nature of the crime are considered as sentencing factors. And the question is whether a discretionary sentencing scheme in all the various states, and every state has a different scheme, the question is whether those schemes require consideration of youth, its attendant characteristics, and the nature of the crime. Montgomery stepped back a little and said, well, we're not asking courts to make express findings on the record. What we're saying is that to implement the substantive guarantee, states need to make sure that this hearing was provided. And for mandatory sentencing, of course it was not provided. And so the remedy that Montgomery imposed in Montgomery was that the defendant, who was subject to a mandatory life without parole sentence, should receive the opportunity to show that he falls within the class of offenders for whom life is unconstitutional. And here, we're not talking about a mandatory scheme. This defendant had the opportunity to show that his youth, those characteristics of youth that any parent knows, that his family background, the nature of his crime, his role in his crime, whether he was a principal or an accomplice, all of these factors that Miller talks about, whether he was 14 or 17, came from the state. Let me take it back to Montgomery. Did this hearing comply with the procedure that Montgomery sets up? Yes, Your Honor. How? It complied because, first, the trial court was sentencing a defendant under the Illinois Constitution. We have to remember that. And the Illinois Constitution requires that a court impose a sentence according to the seriousness of the offense and with the objective of rehabilitating the offender. Those two components of the Illinois Constitution are satisfied when the court considers all information relating to the offender and the offense, and the court is required to consider those things. The fact that Illinois requires courts to impose sentences according to both of those, to the seriousness of the offense and the rehabilitative potential of the offender, is requiring courts to make a determination as to whether the offender's crime reflects irreparable corruption or transient immaturity. So you're saying that mandatory sentences violate not only the Federal Constitution but the state Constitution? No, Your Honor, because this Court has said that the legislature, before Miller v. Alabama, this Court has said that the legislature can make that determination because under the Illinois Constitution, the legislature was allowed to at least say at the outset that an offender could receive life without parole because the legislature could determine that there would be no rehabilitative potential for any offenders. Of course, this Court and Leon Miller stepped back a little and looked at the circumstances of a particular case and said that sometimes for a 15-year-old convicted on an accountability theory, the mandatory sentence itself violates the Illinois Constitution. Could I just make this clear so I understand your argument? Let me last step with the Federal Constitution here, correct? Yes, the Rehabilitation Clause, this Court has said, provides more protection than the Eighth Amendment. It provides more so that that, so... In Clemens. So that we should be looking at this, we should say, this is how the United States Supreme Court looks at the Eighth Amendment, but we should be looking at the broader protections under the Illinois Constitution? Is that the analysis we should be applying here? I don't think the Court needs to go that far, Your Honor, because I think that, yes, the Illinois Constitution itself expressly, as this Court said in Clemens, does provide greater protection because it requires consideration of the rehabilitative potential of an offender generally, for all offenders. Miller v. Alabama did a little bit more in Illinois because it precluded the legislature from making these determinations at the outset. And this Court has said that the Illinois Constitution affects both the legislature and the courts when they're sentencing. But the question is whether the discretionary scheme pursuant to the Illinois Constitution required consideration of these factors. And because the Illinois Constitution does provide greater protection for all offenders when it comes to discretionary sentencing, it does provide greater protection than the Eighth Amendment. The Eighth Amendment's gross disproportionality principles don't extend that far to all offenders. Yes, the U.S. Supreme Court in Miller has come forth and said, okay, for all juveniles you must consider these, but we've always considered those a discretionary sentencing. Illinois has never said that youth is not a relevant mitigating factor. It's never precluded trial courts from considering them. And in determining in the capital realm, the Court has said, has employed presumptions and said when a trial court mentions a factor but doesn't mention other factors, we presume that they've considered those factors. And there's nothing different here. What we know is that Illinois always required consideration of these factors. Defending relies on the scientific advancements of what we know about youth, but these concepts are not new. They've been in our case law for over a century, and that's why we treat juveniles differently. Those are the principles on which we treat juveniles differently. Can I ask you again? There are cases, again, courts all over the country are struggling with this very same problem, and there certainly are courts that have adopted the position the defendant is raising here. Those courts generally did so, Your Honor, after Miller was decided and before some legislatures had a chance to act. And what they did in those cases, and most of them came up on direct review, and what they did in those cases was say, okay, this is a direct review case. This guy received, this juvenile received a mandatory life sentence. We're going to remand. And as part of that direction said, going forward, you must consider these things that Miller outlined. There's no need for this court to go forward and make that same determination because Illinois, in its case law, in its statutes, under its Constitution, has always required these factors to be considered. Do we know if in those other states, and there are a number of them, that have adopted the defendant's position. You're saying in those states, if we look deeply into it, their statutory schemes did not require trial courts to have an individualized, outside of the automatic life sentence statutes. But generally, their states did not require individualized sentencing? Well, some of those states expressly stated that. So Connecticut and the state of Earl Riley expressly said that their statutes didn't require that. I believe Aikens itself, in South Carolina, said something similar. Florida said something similar in Landrum. But there are cases that come out on the other side. California, in Gutierrez, looked at its statute and said, no, we've always required youth to be considered as a mitigating circumstance. So that is not a problem. Yet, in Gutierrez, the court went forward and said, this is a direct appeal case. We're just going to tell courts that you need to make sure that you look at these factors. But, again, looking at these factors doesn't explain what review this court employs. The Illinois courts, again, were required to look at these factors. And so the question is, what review applies? And that review is similar to what this court has always done. And so this defendant's sentence is constitutional, because the trial court looked at everything that was in the record, and it considered everything in the record, and determined, as Justice Thomas pointed out, that the mitigating factors were insufficient to overcome the aggravating factors, and that this person could not be rehabilitated. I would like to address, Justice Tice, your question to opposing counsel about post-Montgomery decisions and what courts have done post-Montgomery. And Arizona and Valencia stated that their law never required courts to make this determination that Montgomery, the distinction that Montgomery draws between the juveniles whose crimes reflect transient immaturity and those whose crimes reflect irreparable corruption. And so they remanded for a hearing at which the juvenile could demonstrate that he belongs within the protected class. Jones, out of Virginia, post-Montgomery, decided that Montgomery itself really only applies to mandatory life without parole sentences, and that a discretionary scheme that allowed a court to consider everything would satisfy Miller. And so courts are struggling with it, as your Honor pointed out, but courts are coming out in different ways. And that's because every scheme is different. The states are different. There are some states that complied with Miller before. There are some states that didn't. And the task before this Court is to determine what Illinois required.  to take consideration of these factors. I would like to point out that Miller itself explained that, or noted in footnote 10, that when courts have discretion not to impose life without parole on a juvenile, the sentence is relatively rare. And in fact, while it's not directly in the record, in Graham, on page 81, the Court cited an Amnesty International Human Rights Watch report. It's called The Rest of Their Lives, Life Without Parole for Child Offenders in the United States. And on pages 31 to 38 of that report, the Court provides some useful statistics about how discretionary sentencing was across the country before Miller. So, for example, the report says that from 1962 to 1981, an average of two juvenile homicide offenders in the country per year were given life without parole. And in 1981, when defendant was sentenced, five out of 1,410 juvenile homicide offenders in the country, or .35% of all juvenile homicide offenders, were given life without parole. And this defendant was one of those five in the entire country. And as for Illinois specifically, the report says that as of 1997, Illinois had high rates of youth violence but low rates of life without parole sentencing. And as of 2000, Illinois had a rate of 1.45 per 10,000 youth given life without parole. But that included mandatory life without parole sentences. So the point, Your Honor, is that Illinois has provided these, provided the discretionary sentencing hearing, the individualized hearing that Miller requires. And there's no need for this Court to remand where the trial court looked at all the evidence and determined that this person could not be rehabilitated and defendant had the opportunity to present any evidence that was relevant to that determination. The defendant chose not to present any evidence or that his counsel chose not to present evidence are different claims. And those are, but Illinois law never precluded him from presenting that evidence. May I have a moment, Your Honor? You may. Thank you. So unless this Court has any further questions, we ask the Court to affirm the judgment of the appellate court and deny defendant leave to file a successive post-conviction petition. Thank you. Seeing none, thank you. Rebuttal. Thank you, Your Honor. The question is about the procedure that's required by Montgomery. And I noted earlier that Montgomery does not, except in DICT, perhaps require a specific procedure. But it certainly, in the paragraph that you mentioned, Justice, discusses what that procedure might look like. And again, it references back to those Miller factors. And regardless of Illinois' individual sentencing schemes and how that all works together, the question is really one of whether or not that individualized sentencing occurred. And the Supreme Court, in multiple orders, has recently been remanding. And of course, they're not binding on this Court. But they were mentioned in my reply brief, just one of them, a case called Tatum v. Arizona. And again, it was a case where someone was sentenced post-Miller. In other words, it was a discretionary natural life sentence because it occurred after Miller. And those are the only type of discretionary natural life sentences that can exist after Miller. And once again, it was remanded under a supervisory order where Justice Sotomayor noted that, you know, the sentencing judge considered, and this again is post-Miller, so these courts are understanding what these factors are, that the trial court here considered that this juvenile was 16 years old, and that qualified as a statutory mitigating factor. But that was not enough. The Supreme Court still remanded. And again, in this order, the Court noted that this was because the Court minimized the relevance of the juvenile's troubled childhood, concluded that this case sums up the result of defendant's family environment. He became a double murderer at age 16. So once again, it requires more than the command that there be individualized sentencing, because certainly in states like Arizona, where that may not have existed, it existed post-Miller. And yet the Supreme Court was still not satisfied. And this is just one of numerous supervisory orders that are being issued for juveniles who were sentenced to natural life post-Miller, where the trial courts understand the Miller factors, they've been instructed on those, and they're not considering those factors. So again, in order for these hearings to be constitutionally sound, though at this point it is not finding precedent on this Court, the factors ensure that the litigation stops here. When trial courts are considering the factors that are outlined in Miller, we can be assured that that hearing was constitutionally sound. And those are the same factors that were referenced in Miller, the same factors that were referenced in Montgomery. The state also wants to make the argument here that Mr. Holman received an adequate sentencing hearing, because again, many of these factors have been recognized for over 100 years in this state. But the question isn't whether or not, when we go through and individually find a case here or a case there that recognizes youth, or the different infirmities associated with youth, whether those existed in the common law. The question is whether or not the trial court actually considered those, especially in light of the fact that they weren't argued, that Mr. Holman was considered to be an adult at the time. And then finally, whether the facts that were argued based on his youth were viewed through the lens of Miller. And I think that we can see in this case that that didn't occur. When we read Miller, it tells us that because juveniles are less culpable than their adult counterparts, that we essentially start the sentencing on the bottom end. And then only after we've considered all of these infirmities of youth, these attendant circumstances, we move up the scale towards natural life when the rarest juvenile is truly irredeemable, it's truly incorrigible. And here we can see from the record that the opposite occurs. Essentially, the argument started with Mr. Holman should have been sentenced to the death penalty, but we're discounting that sentence down to natural life because he was, after all, a juvenile. The state made the argument that but for this mistake of birth, they would have given him a lethal dose of medicine. In other words, even though the fact that he was a juvenile was present, and even though these facts certainly existed in the common law to some extent, not every factor, but some of the factors existed in the common law, is the lens through which the trial court, the state, and defense counsel viewed Mr. Holman in 1981. And through that lens, it's clear that Mr. Holman's youth was not considered in the way that we now know is required by Miller v. Alabama. And finally, in its argument, the state noted that there are very few juveniles who are actually sentenced to natural life, that this is a small problem, I guess, that these numbers occur very rarely. But the question is, does that matter? It makes it easier in the sense that there will be fewer Miller hearings. This will come up very rarely. Mr. Holman, I believe in his appellate court, actually argued that he was the only juvenile at the time that was serving discretionary natural life. But again, he is still a juvenile that was sentenced to natural life. So regardless of whether it's a single juvenile or it's 20 in the state of Illinois, these are teenagers that have been sentenced to die in prison. And it should be about the procedure. Before we sentence juveniles to natural life in prison, we should be assured that the trial court adequately considered youth as it was meant in Miller v. Alabama. If this court has no other questions. Mr. Holman would respectfully request that this court vacate the appellate court's order in remand for new sentencing hearing. Thank you. Thank you. Case number 120655 will be taken under advisement as agenda number five. Ms. Harner, Ms. Gosch, we thank you for your arguments this morning. You are excused.